Kent McKinley v. The Appellant, Crystal Energy Company I hope that the panel has managed to stay awake and that my presentation is not sobering. We're awake. Rest assured. Thank you. Sleeping lawyers, not sleeping judges. Right. The panel may be relieved to know that both Mr. Gomez and I think that our presentation may not require all the allotted time. It's a pretty concrete issue, isn't it? It is. It really is. Very focused. And the court's called upon to decide on an interesting issue which has never been authoritatively resolved by any circuit court since revised Section 106 of the Bankruptcy Code was adopted in 1994. And in Section 106 as revised, Congress states that sovereign immunity is waived for all governmental units in cases arising out of Sections 505 and 542 of the Bankruptcy Code. Our case is a complaint arising out of Sections 505 and 542 of the Bankruptcy Code. Therefore, by the plain wording of the statute, the Bankruptcy Court has jurisdiction to hear my client's complaint unless somehow the Navajo Nation is exempt from the operation of that statute. Well, how could the Nation be exempt? There was some reference below to, well, maybe the Navajo Nation isn't a governmental unit. And remember Section 106 talks about waiving sovereign immunity for, quote, governmental units. But the Nation doesn't argue that, that it's not a governmental unit. Indeed, it couldn't. A moment's thought would tell us all that only a governmental unit could claim a sovereign immunity. Therefore, in order to prevail here, the Nation is going to have to establish that when Congress amended Section 106, it intended to exempt Indian tribes as distinct from all other types of governmental units from the operation of Section 106. Such an interpretation would fly in the face of fundamental bedrock principles of bankruptcy law. An underlying principle of bankruptcy law is to treat all similarly situated creditors equally. If you have some types of government units that are allowed to seize debtors' property and others who are not, then you're not treating all similarly situated creditors equally. In the Bankruptcy Code, it's clear that Congress intended to give the bankruptcy court jurisdiction over all assets of the bankrupt estate. And if a government unit has seized property belonging to the debtor prior to the filing of bankruptcy, under Section 542 of the Code, a bankruptcy trustee in a Chapter 7 case or a debtor in possession in a Chapter 11 case has the right to come in, make that government unit turn over the property that it seized, so that the debtor or the trustee can administer that property for the benefit of all creditors. And if the Navajo Nation is allowed to keep property that it seizes from a debtor, then that fundamental principle of bankruptcy law is violated. We have to square that principle with the Supreme Court's statement that when the argument is that Congress has abrogated sovereign immunity for the Indian tribes, it has to do so explicitly. Yes, Your Honor. And it certainly isn't explicit. Well, I would submit, Your Honor, that it is. I think the statement that sovereign immunity is waived for all government units, that is explicit. I mean, I suppose Congress could have said, sovereign immunity is waived for all governmental units, including Indian tribes. And if that were the case, I guess we wouldn't be here. But they simply waived that defense of sovereign immunity for all government units. That's what the statute says. Well, according to your definition, they would not have had to provide a definition as they did. They could have just said, gone with the basic text of the statute, which is notwithstanding the assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit. Right, right. But instead they went on and they offered a definition which does not include tribes. And Your Honor is referring to Section 10127? Yes. And I guess I should point out that Section 10127 was in the original bankruptcy code. It wasn't dealt with in the Bankruptcy Reform Act. I'm sorry, it wasn't what? I say it was not dealt with in the Bankruptcy Reform Act of 1994 when Congress amended Section 106. It wasn't looking at Section 10127. One of the things I've been wondering about is what other consequences does the definition of governmental unit have in the Bankruptcy Code? Well, there are many references to governmental units in the Bankruptcy Code that have nothing to do with it. Your Honor, are there any cases about whether Indian tribes are governmental units for any of those other purposes? Well, I can't think of any, Your Honor. You know, the question only comes up in a situation like this. But certainly there are other areas of the Bankruptcy Code where a definition of governmental unit is needed, for instance, in the filing of proofs of claim. Does that answer your question? Well, it occurred to me to go looking to see, and I will ask your opponents this as well, that I would assume that the – it would seem to me that the definition of governmental unit in this code has to either apply to Indian tribes or not apply to Indian tribes. So if they're out of the sovereign immunity section, I would assume they're out in general, and I'm just curious about what the consequences of that are. I don't think they are out in any section, in any facet of the Bankruptcy Code. I think they're a governmental unit just as the federal government is, just as a local government is. I think they are included within the definition of – in the definition section of the code. When Congress talks about – in the definition section, it talks about other foreign or domestic government. That statement is broad enough to include an Indian tribe. And I think you have to focus on what is Congress's intent in doing this. I mean, if we're wrong, then every government other than an Indian tribe has to turn back property that it seized. But an Indian tribe somehow is allowed to keep its property, property that it seized, and frustrate the purposes of the Bankruptcy Code. It just doesn't make sense that that would be Congress's intent. And that's what we're trying to do, is to decide what was Congress's intent. Yeah, Congress could have been clearer. What we're really trying to do is to figure out how a plain meaning rule operates. We know that there is a plain meaning rule in this area, or a plain statement rule, not a plain meaning rule. A plain statement rule, or explicit statement rule. And the question is, does an explicit statement rule mean that you have to name the particular entity, or is it good enough to name a category that necessarily includes that entity? That's really the issue. Well, to quote a circuit court in a case cited by The Nation, that degree of explicitness is not required by Congress. This is a statute of general application, and unless The Nation can show that somehow it is outside that rule, then it's within the rule. So the definition of other foreign or domestic government we submit is sufficient to include Indian tribes, Congress intended to abrogate the sovereign immunity of all governments, and as a result the claim survives and the bankruptcy court has jurisdiction to hear it. Any other interpretation is illogical. There was a recent bankruptcy reform bill that Congress never passed, but got very close recently. Do you know if they addressed this issue in that? I don't at all, Your Honor. It's an interesting question. I just don't know the answer to it. Certainly Congress could change this any time they wanted. Oh, absolutely. Everybody understands that. Absolutely. They could just put in the words. Yeah. And, you know, I suspect Congress really didn't even think about this issue when it got around to that amendment in 1994. I think its purpose was clear. That is, we don't want governments seizing debtors' property and frustrating the purposes of bankruptcy law. And, again, there's nothing distinct about an Indian government as opposed to any other kind of government, which would offer a different result. I'd like to use the rest of my time. Okay, sure. Thank you. Thank you. May it please the Court. My name is Marcellino Gomez. I'm with the Navajo Nation Department of Justice here on behalf of the Navajo Nation. The main issue before the Court today is whether the Navajo Nation can be sued in the federal bankruptcy court on Crystal Energy's claims when the Navajo Nation has not filed a proof of claim nor participated in any other way in Crystal Energy's Chapter 11 bankruptcy proceeding. In Crystal's complaint, they discussed this tax assessment. It was one of the, I think, count number two in their complaint that they're talking about, that they filed the adversary complaint trying to get the bankruptcy court to hear that. Briefly, the Navajo Nation imposes a fuel excise tax, like many other states, of $0.18 a gallon. And in the imposition of this tax, they ask refiners, distributors, and retailers to get the fuel within the Navajo Nation to register and file reports. The purpose of these reports is to allow the Office of the Navajo Tax Commission to monitor fuel distribution within the Navajo Nation. In furtherance of the enforcement of the fuel excise tax, the Navajo Nation has entered into numerous intergovernmental agreements with different states, including Arizona, New Mexico, Utah, California, Texas, to monitor fuel distribution coming on and coming off of the Navajo Nation. With respect to taxes, taxes and revenues from oil and gas production and coal production account for probably more than 90% of the general fund revenues of the Navajo government. So they're really an important funding source to fund essential governmental services. We agree with Crystal that Congress does have the authority to abrogate the sovereign immunity of an Indian tribe, but I guess where we differ with Crystal here is that sovereign immunity of an Indian tribe is a very important aspect of the tribe's sovereignty. This was recognized in U.S. v. Wheeler, and one component of that sovereignty is the tribe's immunity from suit. Let me see if I can understand your argument. Is your argument that you cannot abrogate the sovereign immunity of an Indian tribe without saying Indian tribe? You know, I think you need to say that because it's such an important aspect. No description of any kind other than specifically referring to Indian tribal work. I think there's been areas where you can identify the types of governments in a definition where you would have to say Indian tribe, like, for example, the Clean Water Act. So this is my question. Next question. Is it your position that more specificity is required to abrogate the sovereign immunity of an Indian tribe than to abrogate the sovereign immunity of a state, for example? Or is it the same? In other words, can we look to determine what degree of specificity is needed? Can we look at the cases that deal with the abrogation under Section 5 of the 14th Amendment, for example, of state immunities? I think I guess my response to your question is we would probably need more specificity. Why? Where would that come from? That would come from the federal government's trust relationship with Indian tribes. I think it's important to point out here that Indian tribes existed before the Constitution of the United States and North America, and Congress has a special relationship under the Constitution where they regulate commerce with Indian tribes. Because a tribe's sovereign immunity is a vital part of the tribal government's sovereignty and their ability to self-govern. It protects the tribal government's right to determine how conflicts which may inevitably arise will be resolved, and this would include the power to determine immunity from suit. As I mentioned, the federal government has a trust obligation to protect and nurture tribal sovereignty, and the protection of tribal immunity naturally extends from that obligation. And a third, which we see as a very practical reason, if the sovereign immunity of an Indian tribe were to be removed in the bankruptcy court, it would make it very easy for any company or any person who wanted to sue an Indian tribe to file a Chapter 11 petition for bankruptcy and within a day or two file an adversary complaint against the tribe and force the tribe into bankruptcy court to defend in a lot of things whether they're legitimate or frivolous. And this has the potential to harass and potentially bankrupt tribal governments. Well, there are sanctions available for frivolous cases. There are, but it still requires the tribe to go into bankruptcy court and defend the case, even though it may be a frivolous complaint. And that requires resources, and there are some tribes that are not involved in gaming, like, for example, the Navajo Nation. Excuse me. What remedies does the debtor have here? The debtor? How does the debtor ever get back? I mean, it claims that the nation seized its assets. Okay. What can the debtor do here if he can't bring the nation into bankruptcy court? The debtor has available to it the courts of the Navajo Nation to bring this claim. The Navajo Nation has a Navajo Bill of Rights, which the debtor could raise a claim. If property has been taken from them, the nation has the debtor can raise a claim in Navajo courts asking for compensation of the property. Isn't the real problem here that the argument you're making can be and will be and would have been made by states and other governments as well, all of whom are very fond of their sovereign immunity. And yet we have this statute that is written in extremely broad language and seems to evidence an intent to abrogate sovereign immunity of every government anybody could have thought of, including another foreign or domestic government. Well, the Indian tribe isn't a domestic government. What is it? Isn't that the problem here? In other words, you're arguing why it is the sovereign immunity is useful and important, but all the other entities that are covered by the statute could and would, if available, make the same argument. So the real question is, did Congress, does this language cover you or not? Well, I think in looking at the language itself, it mentions states, and it mentions foreign governments, but it doesn't mention tribal governments. It doesn't mention one. It does not mention tribal governments. But it mentions any other foreign or domestic government. But, you know, it's not clear what Congress means. And I think the standard that the U.S. Supreme Court has utilized in the cases like Kiowa, Santa Clara. There's language, but there's nothing like it. I mean, there's language that says it has to be explicit, but there's really nothing in the Supreme Court cases that says what that means. I mean, there was no instance in those cases in which there was a generic description, and the question was which would fit an Indian tribe. I mean, I assume you'd have to agree that one could describe an Indian tribe as a domestic government. So the question is, is that good enough or does it have to be more specific? I think it has to be more specific, clear and unequivocal, clear and unmistakable. I think in reading that. Well, what is the argument that an Indian tribe is not a domestic government? I guess that's my question. You know, I think our argument would be that we're not a domestic government in the terms of we're not part of a state government. And I think. Like a domestic nation within a nation. Is that the phrase that's used for an Indian tribe? That it's a domestic nation? You know, I think they have referred in the past to domestic independent nations or something. I guess I need to know, why doesn't the phrase domestic government cover an Indian tribe? Why doesn't it clearly cover an Indian tribe? Well, I think the question, and maybe to rephrase your question. I'm going to answer you, rephrasing the question. Why doesn't it clearly say Indian tribes? And I think it doesn't say, it doesn't clearly say Indian tribes. And in that absence, the Court should not imply that they meant Indian tribes and domestic governments. It's an interpretation. It's what does the language mean? You don't have to imply anything. You just have to say what does this language mean. Right? You know, I think in looking at the language, what does this language mean? Does it include Indian tribes? Well, what is the argument that it doesn't include Indian tribes? That's what I want to hear. What argument would you make to say that an Indian tribe is not a domestic government? My argument would be when Congress has meant to include Indian tribes, it has said Indian tribes. For example, in some statutes, the Resource Conservation and Recovery Act, where they define person to include municipalities, and then they define municipalities to include Indian tribes or authorized tribal organizations. And then in the Safe Drinking Water Act, where they also utilize the term person included municipalities, and they included Indian tribes in the definition of municipalities, so that Congress knows how, when they want to, to include Indian tribes in waiving their sovereign immunity. Here, the bankruptcy code is just totally absent. In looking for the term Indian tribes in the bankruptcy code, you just don't get any hits on the Westlaw search. And when language of a federal statute does not include Indian tribes, and the definitions of parties subject to suit, or does not specifically assert jurisdiction over Indian tribes, courts have found the statute insufficient to express an unequivocal congressional abrogation of the tribal sovereign immunity. And, for example, in the case, is there any case in which there was a generic description, which you still haven't told me why it doesn't include Indian tribes, but there wasn't a language of Indian tribes, and, therefore, there was no abrogation. Is there a case like that? And it was where there was a general phrase that could well have included Indian tribes. Let's at least say that. The general phrase that did not specifically mention it. Okay, what cases? Well, I think Bassett v. Mashantucket Pequot. Sorry, Ken. Bassett v. Mashantucket Pequot. And this was a case where an Indian tribe was held immune from suit under the Federal Copyright Act. Indian tribes were not mentioned. And then another instance would be Florida Paraplegic Association v. Miccosukee Tribe. This is out of the 11th Circuit, 1999. And that circuit held because Congress made no specific reference to tribes anywhere in the Americans with Disabilities Act. Tribal sovereign immunity is not abrogated. A congressional abrogation of tribal immunity cannot be implied. And I think the bankruptcy code, like these two acts, is completely silent with respect to Indian tribes. And other circuits sort of facing the same interpretation have made the determination, unless you mention Indian tribes, there's not a clear and unequivocal abrogation. In both of those cases, there was some generic language that could have covered the Indian tribes, but it wasn't going to. I don't know because I haven't looked at them. Yeah, it's my understanding that those two cases did not specifically mention Indian tribes. And, you know, I think maybe, you know, there have been some, and we agree Congress has the authority to waive sovereign immunity of an Indian tribe when they clearly and unequivocally express that. And any time Congress has a bill before it which would do that, and, in fact, shortly after the Kiowa decision came down, Senator Gorton out of Washington did introduce a bill which would have limited a tribe's sovereign immunity with respect to certain actions. So whenever that happens, I think a number of tribes will show up and testify before Senate committees and congressional committees on the importance of this sovereign immunity. If there was an impression that the bankruptcy code was going to waive sovereign immunity, there would be significant testimony received from tribes on that issue. To the best of my knowledge, tribes never showed up to testify regarding the bankruptcy code changes in the mid-90s. They were not there because I don't think anybody understood that there were any changes that impacted tribes with respect to their sovereign immunity. You're talking about the 94 revision. Okay. Yeah, 94. I'm not aware of tribes showing up to testify on that issue because I don't think there was an impression amongst tribes that that issue was on the table. Two of the cases that were relied on by Crystal, the bankruptcy cases, and talking about which were Davis Chevrolet and Inouye Viennese, these were two cases where tribal governments were actively involved in the bankruptcy. For example, in Davis Chevrolet, the tribe filed proofs of claim pertaining to business site lease rentals and a business loan. In Ray Viennese, the Indian tribe filed an adversary proceeding seeking a determination as to the dischargeability of a debt. So in both these situations, the tribes were actively participating in the debtor's bankruptcy. Here, the Navajo Nation only made a special appearance to file its motion to dismiss under sovereign immunity. This active participation principle is reinforced by the circuit's decision in Inouye White. In White, the Colville Credit Corp., which is a part of the Colville tribe, filed an objection to the Chapter 11 plan. It also filed a ballot objecting to the plan and filed an additional objection to an amended plan and then filed a ballot rejecting the amended plan. So in that situation, the tribe was held to have waived its sovereign immunity because of its active participation in the bankruptcy. Here, the Navajo Nation has not filed any proof of claims and has not actively participated in the bankruptcy and does not want to be brought into the bankruptcy. In conclusion, the Navajo Nation believes only Congress may abrogate tribal sovereign immunity under the Constitution. And Congress, in this situation, has not unequivocally abrogated tribal sovereign immunity. The code makes no specific mention of Indian tribes. Unlike states and foreign governments, Indian tribes are not specifically included in Section 101.27, the definition of governmental unit. And until Indian tribes are specifically mentioned in there, there is no clear and unequivocal abrogation of the tribe's sovereign immunity. What if the statute said there is a way of the sovereign immunity or abrogated sovereign immunity of any government whatsoever? You know, that would be a broader definition than currently exists. I'm not sure it is, but it doesn't mention Indian tribes. I think it doesn't mention Indian tribes, but I think it is a broader definition. If it's not a foreign government or a domestic government, then it would have to be, what, a Morris government? Well, you know, I think until you're going to such an important attribute of a tribal government, which is the sovereign immunity to determine whether they can be sued or not, I think it's appropriate to specifically say this is what we're doing to you, because you're basically putting the very survival of the Indian tribe at risk. And to imply that there's a waiver where there is no unequivocal waiver I think is a pretty harsh result. Thank you. Thank you, Counsel. Certainly Crystal agrees that the concept of Indian tribal immunity is a very important principle. It's important to the Navajo Nation. It's important to Congress. So is the principle of sovereign immunity important to foreign governments and therefore important to Congress? So is the ability to collect taxes important to Congress? But none of these principles are sacrosanct, and Congress has determined that in certain areas of the Bankruptcy Code, those principles have to give way to these underlying bankruptcy principles. To answer Judge Brisson's question, I'm not aware of any statute, and certainly there's no case that's cited in any of the briefs where there's anything that says sovereign immunity is waived for any types of government units. What about the Florida paraplegic and Bassett cases? What do those statutes look like? The Bassett case deals with the Copyright Act. The Copyright Act doesn't even mention sovereign immunity. There's no mention of it at all. So it's just a matter of trying to analyze an Indian tribe's sovereign immunity versus some other government's sovereign immunity. The Florida paraplegic case, if I can read it to you here, says that a general statute presumptively applies to tribes absent some superseding indication that Congress did not intend tribes to be subject to that legislation. Here, there is no superseding indication that Congress didn't intend. What was the superseding indication in that case? I'm groping here. I can't tell you. But I guess my basic point is that there's nothing in any of those cases where Congress has said we are waiving sovereign immunity. To answer Judge Piazza's question, what would happen here? What remedies does the debtor have if the nation's argument is upheld? Basically, what it means is the debtor can get no relief in bankruptcy court. Once all your assets have been seized by a tribe, it's impossible to reorganize. I guess you may be able to go into tribal court and sue to get a money judgment, but you can't reorganize. And another point is that we're not arguing that the nation is subject to Section 106 because it has or hasn't actively participated in the bankruptcy case. That used to be the standard under old Section 106. That's the way you could get it, that you could bring a tribe into bankruptcy court. That's not the standard under new 106, so those cases simply don't apply. I was going to ask the Court if it was disturbed at all or concerned that the Green case may be controlling. If it is, I want to explain why the Green case is not controlling. Well, if they weren't deciding, it would have to be controlling. I think what they said is, yeah, what you said is that they were... Didn't decide it. Right, didn't decide it, but they assumed that it was a government unit. But that is not controlling because it was decided under the former Section 106, and it really wasn't decided on grounds of separate Indian sovereignty versus other governments' sovereignty. Green was a decision where the Court felt it was bound by decisions of the Supreme Court in Nordic Village and Hoffman, and the specific purpose of amending Section 106 was to overrule the Supreme Court's opinions in Nordic Village and in Hoffman. So Green clearly doesn't apply. And, Your Honor, I'm back to the same concluding argument, that is, Congress intended to waive sovereign immunity for every government under the sun. There's nothing that would indicate a different intention for Indian tribes. Yeah, I guess the language isn't as perfect as we would like, but I don't know how much clearer you can be. Well, they could just say Indian tribes. In that list of categories, they could have just... They could have said that. It's true. It's true that... That would have been a little better. But I think it's good enough right now. Thank you, Your Honor. Thank you. The matter stands submitted, and we'll recess for the day. Thank you, Your Honor. Thank you, Your Honor. Thank you. Thank you, Your Honor. Thank you. Yes. Thank you. Thank you. Thank you. Thank you.  Thank you.
judges: Leavy, Paez, Berzon